FILED
2014 Oct-16  PM 12:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DEBORAH L. LOUALLEN,            )
                                )
            Plaintiff,          )
                                )
    vs.                         )            5:13-cv-01585-LSC
                                )
CAROLYN W. COLVIN,              )
Commissioner of Social Security, )
                                )
Defendant.                      )

MEMORANDUM OF OPINION

I.    Introduction

Plaintiff, Deborah L. LouAllen, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. LouAllen timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. LouAllen was thirty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision and she has a ninth grade education. (Tr. at 52.) Her past work experiences include employment as housekeeper in hotels, as a janitor, and as

kitchen help in a restaurant. (Tr. at 169-72.) Ms. LouAllen initially claimed that she became disabled on June 30, 2005, which was later amended to March 31, 2010. (Tr. at 30, 119.) Plaintiff alleges disability based on fibromyalgia, depression, restless legs, thyroid problems, scoliosis, ear problems, back problems, tremors, and knee problems. (Tr. at 51, 180.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ first found that Ms. LouAllen met the insured status requirements of the Social Security Act through March 31, 2010. (Tr. at 32.) He further determined that Ms. LouAllen has not

engaged in substantial gainful activity since the initial alleged onset date of June 30, 2005. *Id.* According to the ALJ, Plaintiff's osteoarthritis, degenerative disc disease/scoliosis, fibromyalgia, major depressive disorder, anxiety disorder, and obesity constitute "severe" impairments based on the requirements set forth in the regulations. *Id.* However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 33.) The ALJ found Ms. LouAllen's allegations concerning the intensity, persistence, and limiting effects of her impairments not credible to the extent they conflicted with the medical evidence, but did find that the medically determinable impairments could be expected to cause some of the alleged symptoms. (Tr. at 36.) He determined that she has the following RFC: light work with a sit-stand option, but "limited to occasional climbing, stooping, crouching, knelling [sic], and crawling;" and to "simple, unskilled work with simple job instructions," a "low-stress environment" with rare "changes in work settings," and only occasional public and co-worker interaction, where incidental to the work performed. (Tr. at 35.)

According to the ALJ, Ms. LouAllen is unable to perform any of her past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 39-40.) He determined that

"transferability of skills is not an issue in this case." (Tr. at 40.) Even though Plaintiff cannot perform the full range of light or sedentary work, the ALJ relied on the testimony of a vocational expert ("VE") as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as wire inserter, scheduler, shell fish preparer, dial marker, dowel inspector, and lens inserter. *Id.* The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from June 30, 2005, through the date of this decision." (Tr. at 41.)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for " despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Ms. LouAllen alleges that the ALJ's decision should be reversed and remanded for several reasons. First, she contends that the ALJ improperly assigned more weight to the opinion of Dr. Dobbs, the state agency non-examining psychologist, than to Dr. Smith, the consultative examiner.  She also argues that the ALJ did not articulate what

weight he gave to her testimony regarding subjective pain allegations.

A.    Weight Given to the Opinions of the State Agency Non-Examining
      Psychologist and the Consultative Examiner

Plaintiff argues that the ALJ erred with respect to his evaluation of the opinion of the consultative examiner, Dr. Smith, for two reasons: 1) the ALJ failed to clearly state the weight he accorded to the opinion of Dr. Smith, and 2) the ALJ did not specifically address Dr. Smith's conclusion that "Ms. LouAllen's ability to maintain gainful employment is severely impaired at this time." (Doc. 6 at 4.) Plaintiff further asserts that the ALJ erred by assigning the greatest weight to the opinion of a psychologist who did not examine Plaintiff, Dr. Dobbs, over that of Dr. Smith. (Doc. 8 at 8-9.)

As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as "your

physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as " a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a " a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Importantly, the ALJ " may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). The ALJ must state with particularity the weight he gives to different medical opinions and the reasons why. *Id.*

With regard to Dr. Smith, she performed a psychological evaluation of Plaintiff on November 1, 2010, at the request of Disability Determination Services ("DDS"). (Tr. at 359.) In addition to her clinical evaluation, Dr. Smith engaged in a review of Plaintiff's medical history of record. *Id.* Based on her evaluation, Dr. Smith diagnosed recurrent, severe major depressive disorder, and generalized anxiety disorder. (Tr. at 38, 361).   Dr. Smith found Plaintiff to have a GAF score of 45, indicating severe symptoms.[1] (Tr. at 361.) Dr. Smith found that Plaintiff's level of "social and adaptive functioning, based upon mental health issues alone, appears to be severely impaired." (Tr. at 361.) Dr. Smith further concluded that Plaintiff would "require assistance in meeting her daily living and medical needs." *Id.*

In discussing Dr. Smith's opinion, the ALJ articulated that although the medical record did not support Dr. Smith's conclusion that Plaintiff required assistance to meet her daily living and medical needs, Dr. Smith's opinion nonetheless deserved "some" weight. (Tr. at 39.) As such, the ALJ noted that the RFC he assessed for Plaintiff specifically incorporated Dr. Smith's findings as they pertained

---

[1]The ALJ appears to have mistakenly indicated that Dr. Smith assigned a GAF of 50, rather than 45. (Tr. at 38). This is no more than harmless error as the range for serious symptoms is 41-50. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, p. 34 (Text Rev., 4th ed. 2000)(DSM-IV). Because the ALJ properly considered the appropriate range of scores in his decision, his error in stating the particular score within that range is harmless.

to social and adaptive functioning. *Id.*   Specifically, the ALJ limited Plaintiff to working in a low stress environment with few, if any, changes in the work setting, and only occasional interaction with the public and co-workers, incidental to the work performed.  (Tr. at 35, 39). However, the ALJ explained that the evidence did not support including a limitation that Plaintiff needed assistance in meeting her daily living and medical needs. (Tr. at 39).  Dr. Smith's evaluation notes, as discussed by the ALJ, show Plaintiff was cooperative and her behavior was appropriate, she talked openly about her problems, and initiated and maintained eye contract throughout the session.  (Tr. at 360). Plaintiff was alert and oriented to time, place, person and situation. (Tr. at  360). Her thought content and processes, insight, and judgment were within normal limits. (Tr. at 360). Plaintiff demonstrated no auditory or visual hallucinations, or manifestations of bizarre, abnormal fears, or obsessions.  (Tr. at 38). She was able to perform simple math, answer questions within a normal response pace, had intact recent and remote memory, and had adequate attention and concentration (Tr. at 38, 360-361).

The ALJ also cited the November 3, 2010 assessment of state agency psychologist, Dr. Dobbs, in support of his rejection of Dr. Smith's opinion.  (Tr. at 39.)  State agency consultants are highly qualified specialists who are also experts in

the Social Security disability programs, and their opinions may be entitled to great weight if, as here, the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(3)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 61 Fed. Reg. 34,466-01 (July 2, 1996). Although Dr. Dobbs did not examine Plaintiff, he reviewed Dr. Smith's report, Plaintiff's Physical Consultative Examination conducted by Marlin Gill, M.D., family medicine, and Plaintiff's complaints of depression and anxiety-related disorders. (Tr. at 39, 378.)  In his Psychiatric Review Technique ("PRT"), Dr. Dobbs found Dr. Smith's report to overstate Plaintiff's mental limitations relative to the medical evidence of record with respect to both her activities of daily living restrictions, and her difficulties in maintaining social functioning. (Tr. at 378.)  Dr. Dobbs cited several pieces of evidence to justify his skepticism in Dr. Smith's report.  Plaintiff has never received mental treatment other than medication for nerves since 2005. *Id.* Dr. Smith suggested severe impairments in social and adaptive functioning in spite of Plaintiff's "polite and cooperative" manner during Dr. Smith's interview. *Id.* In assessing Plaintiff's level of functioning, Dr. Smith made no attempt to distinguish between physical and mental impairments. *Id.*  Dr. Dobbs further explained that a GAF score of 45 should not be considered valid, as it is not supported by Plaintiff's cognitive capabilities demonstrated at the consultative examination performed by Dr. Smith.

(Tr. at 378).

Given the foregoing evidence discussed by the ALJ, Plaintiff's assertion that the ALJ did not "clearly state" the weight given to the opinion of Dr. Smith fails. (Doc. 8 at 8.) The ALJ's opinion clearly states that he gave "some" weight to Dr. Smith's opinion, and he articulated which portion of the opinion he credited, and which part he did not credit, and provided support in the medical record for his conclusions. (Tr. at 38-39.)

Additionally, Plaintiff maintains that reversible error occurred when the ALJ disregarded Dr. Smith's finding that Plaintiff's "ability to maintain gainful employment is severely impaired at this time." (Tr. at 361.) Plaintiff cannot prevail on this point either. Because a finding that Plaintiff could not maintain gainful employment is tantamount to a finding of disability, such opinions "are not medical opinions . . . but are, instead, opinions on issues reserved to the [ALJ] because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is concerned with the doctors' evaluations of Ms. LouAllen's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are

relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing Ms. LouAllen's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).  Thus, the ALJ properly disregarded this part of Dr. Smith's opinion.

Plaintiff also characterizes the ALJ's opinion as ignoring the medical opinion of Dr. Smith to focus exclusively on the assessment provided by Dr. Dobbs. (Doc. 8 at 9.) The record does not support such a position. As an initial matter, as noted, the ALJ stated that he assigned "some weight" to the opinion of Dr. Smith, and for the reasons stated above, he did not ignore her opinion. (Tr. at 39.)   Furthermore, substantial evidence exists supporting the ALJ's decision to give Dr. Dobbs' opinion greater weight than Dr. Smith's.  Dr. Smith's own report casts doubt upon the accuracy of her conclusions. For instance, her description of Plaintiff's activities of daily living is inconsistent with someone requiring significant assistance: " Daily activities consist of getting out of bed . . . , getting her baby up and changed, get[ting] daughter ready and tak[ing] her to school, light household chores with frequent breaks, . . . cook[ing] and do[ing] laundry . . .  She is able to drive short distances." (Tr. at 360.)  Dr. Dobbs' conclusions do not contain this tension.  Additionally, Dr. Dobbs concluded that the medical evidence of record indicated only moderate mental limitations. (Tr. at 39, 378).  He found Plaintiff has no significant problems with

memory or comprehending instruction, sustaining persistence, concentration, and pace, or adapting to normal changes in the work environment; and she is able to interact appropriately in casual settings and respond appropriately to constructive instructions. (Tr. at 39, 382). In support of his opinion, Dr. Dobbs cited Plaintiff's sporadic diagnosis of depression and anxiety until April 2010 and the lack of mental treatment other than nerve medication from her treating physician since September 2005. (Tr. at 378).

Moreover, Plaintiff's own testimony supports the ALJ's determination that Dr. Smith overstated Plaintiff's inability to engage in the activities of daily living and Dr. Dobbs' report was more consistent with the medical evidence as a whole. Plaintiff stated that she was capable of driving herself locally (tr. at 54-55), going grocery shopping (tr. at 60-61), cooking and cleaning the house (tr. at 64), and taking her daughter to school. (Tr. at 67.) Plaintiff further acknowledged that at one point she cared for her terminally ill brother for six months. (Tr. at 71.)

In sum, comparing Dr. Smith's report with the other medical evidence of record, including Dr. Dobbs' analysis (tr. at 378) and Plaintiff's own testimony regarding her activities of daily living (tr. at 54-55, 60-61, 64, 67, 71), and given the lack of deference afforded a "one-time examiner," *McSwain*, 814 F.2d at 619,

substantial evidence supports the ALJ's decision to assign greater weight to the opinion of Dr. Dobbs than to the opinion of Dr. Smith.

C.    ALJ's Credibility Determination

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit has established a "pain standard," i.e., the method of establishing disability based upon pain and other subjective symptoms:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  The ALJ must consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and other evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4); 416.929(c)(3)-(4).  The ALJ is permitted to discredit Plaintiff's subjective testimony of pain and other symptoms if he "articulates explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225

(11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record . . . . The adjudicator may . . . find an individual's statements . . . to be credible [only] to a certain degree."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer,* 395 F.3d at 1210 (quoting *Foote,* 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Plaintiff had met the "pain standard" in that her medically determinable impairments could reasonably be expected to cause her alleged symptoms.  However, he found that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged pain and other symptoms were not credible.

Plaintiff asserts that the ALJ did not explain why he discredited her testimony relating to her back and knee pain and anxiety.  (Doc. 8 at 10.)  The record does not support Plaintiff's argument.  In assessing Plaintiff's credibility, the ALJ first

discussed the treatment records of Plaintiff's treating physician Dr. Amit Vora from February 2008, to October 2011. (Tr. at 36.) Plaintiff was treated by Dr. Vora for hypothyroidism, back pain, anxiety, and fibromyalgia.  (Tr. at 290-308.)  Mere diagnoses, however, do not establish functional limitations limiting a plaintiff from working.  *See* 20 C.F.R. §§ 404.1512(a)-(c), 404.1529(a), (c), 404.1545(a)(3), 416.912(a)-(c), 416.929(a), 416.945(a)(3); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  In October 2011, Dr. Vora informed Ms. LouAllen that she could not provide additional medical help for Plaintiff and expressed her intention to refer her to a psychiatrist. (Tr. at 36, 508.) The opinion of a treating physician that the subject's symptoms have no basis in a physical condition, as Dr. Vora seems to imply, offers powerful support to skepticism regarding the severity of Plaintiff's subjective complaints. Moreover, at no point during her treatment did Dr. Vora's notes recommend a restriction or limitation to Ms. LouAllen's activities as a result of the observed injuries. (Tr. at 290-308, 502-08.)  Indeed, Dr. Vora's treatment notes show Plaintiff required no more than conservative treatment of injections and medication.  (Tr. at 292-293, 297-305, 502-506). The ALJ further explained that Dr. Vora's treatment records suggest Plaintiff did not comply with the recommendation of obtaining an MRI and to see a psychiatrist as there are no records showing the results

of these recommendations. (Tr. at 36, 505, 508).  This mild and conservative treatment history by Plaintiff's treating physician indicates that Plaintiff's condition was not as intense, persistent, or limiting as she claimed. *See* 20 C.F.R. §§ 404.1529(c)(3)(vi) 416.929(c)(3)(vi).

The ALJ also assessed Plaintiff's claimed limitations within the context of a consultative examination performed by Dr. Gill on October 27, 2010, and a medical evaluation and case analysis performed by Robert Heilpern, M.D., a medical consultant with DDS, on November 8, 2010. (Tr. at 37-38.) Dr. Gill noted no assistive devices in use by Plaintiff, and activities of daily living that included house cleaning, cooking, laundry, dishwashing, and childcare. (Tr. at 356.) Dr. Gill observed no tenderness in the thoracic area, mild tenderness in the lumbar spine area, and normal knee appearance, including the ability to walk on tiptoes and heels. (Tr. at 357.) Dr. Heilpern summarized Dr. Gill's findings as part of completing his Physical RFC assessment. (Tr. at 390.) Dr. Heilpern opined that he considered Plaintiff "to be partially credible," with an "impairment capable of producing her allegations, but not to the severity alleged." (Tr. at 384, 390.)

Subsequent medical records also fail to support Plaintiff's allegation of disabling pain and other symptoms. As the ALJ explained, emergency room treatment notes

during 2011 show Plaintiff ambulated independently and could perform all activities of daily living without assistance. (Tr. at 37, 407). Additionally, Plaintiff had painless range of motion of her back, full range of motion of her extremities with no tenderness, and normal motor, sensory, and reflexes. (Tr. at 403, 526, 534, 556, 560, 570). On April 23, 2011, an MRI by Michael Smith, M.D., signing radiologist at Huntsville Hospital, revealed narrowing and a broad-based disc protrusion in the lumbar spine, while the cervical spine displayed multilevel degenerative change and scoliotic deformity, including degenerative changes, to the right of the thoracic spine. (Tr. at 441.) Nevertheless, Plaintiff's gait was normal with no swelling or tenderness in her extremities (Tr. at 431, 434).

The ALJ acknowledged that Plaintiff received treatment for her knee and back pain from Decatur General Hospital from September 17 to November 15, 2011. (Tr. at 36, 524-575). Despite Plaintiff's complaints of back pain, as mentioned above, a physical examination showed full range of motion of her extremities with no tenderness, and normal motor, sensory and reflexes. (Tr. at 526, 534). In November 2011, Plaintiff fell in her bathtub. (Tr. at 556-559). As discussed by the ALJ, an x-ray of her right foot revealed osteoarthritis with no evidence of acute fracture or dislocation. (Tr. at 36, 540). An x-ray of the lumbar spine showed spondylosis with

no evidence of acute disease.  (Tr. at 541). An x-ray of her left knee revealed osteoarthritis with synovial osteochrondromatosis.  (Tr. at 36, 542, 545). However, no ongoing limitations or restrictions were noted by the physicians who treated her. (Tr. at 556-559).   On November 13, 2011, Frank Scalfano, M.D., interpreting radiologist at Decatur Hospital, reported on an MRI showing that Plaintiff suffered from an osteophytic formation (bone spurs) and disc space narrowing in her lumbar spine, as well as osteoarthritic changes in her left patellofemoral joint (kneecap). (Tr. at 541-42.) Notably absent from the November MRI was any evidence of acute fracture or dislocation of the knee, nor acute fracture or subluxation of the lumbar spine. *Id.* The MRI from November 2011, is the most recent medical evidence in the record.

Aside from the medical evidence, the ALJ also noted the instances where Plaintiff's activities demonstrate her symptoms were not as limiting as she had alleged. (Tr. at 36). For example, although Plaintiff received treatment for complaints of back pain and fibromyalgia, she was taking care of her terminally ill brother in March 2009. (Tr. at 36, 299). The ALJ also observed that in June 2010, Plaintiff complained of severe back pain that radiated to her legs; however, Dr. Vora noted that Plaintiff was lifting her twenty-four pound baby every day several times a day. (Tr. at 36, 291).

Regarding Plaintiff's allegations that she suffers from anxiety and depression, the ALJ acknowledged that Plaintiff had a mental health assessment in September 2010 at the Mental Health Center for North Alabama. (Tr. at 37, 346-350). The ALJ noted that Plaintiff reported no inpatient treatment but stated that she had received outpatient treatment at Alabama Psychiatric Services for about three years. (Tr. at 37, 349). However, Plaintiff was not receiving any current mental health treatment. (Tr. at 37, 349). The ALJ observed that she was instructed to return in two weeks to initiate therapy but the evidence of record does not indicate if this instruction was followed. (Tr. at 37, 350.)  Moreover, Plaintiff's own testimony and the treatment notes of Dr. Gill and Dr. Smith make clear that Plaintiff is capable of performing activities of daily living, undermining her complaints of disabling mental difficulties. (Tr. at 39, 54-55, 60, 61, 64, 67, 71, 356.)

In sum, the ALJ specifically addressed the substance of Plaintiff's allegations of subjective symptoms in his opinion. He stated the extent to which he gave them credence, and then engaged in an extended discussion of the medical evidence of record to support the inconsistencies between Plaintiff's allegations and the objective evidence. The objective evidence provides support for the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that she

could perform a reduced range of light work. (Tr. at 35-36.)  Substantial evidence supports the ALJ's credibility determination.

IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. LouAllen's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 16<u>th</u> day of <u>October 2014</u>.

L. Scott Coogler
United States District Judge
[160704]